FILED by    **R B**   D.C.
ELECTRONIC

**Dec. 26, 2008**

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CIVIL DIVISION

Case No.

# 08-81560-CIV-RYSKAMP/VITUNAC

NERLINE HORACE-MANASSE;
and
GERALD SANON;

      Plaintiffs,

v.

GEORGE THEODULE;
DOROTHY DELISFORT-THEODULE;
YOLETTE THEODULE-WILLIAMS;
MARIO THEODULE;
JULIUS THEODULE;
YVES THEODULE;
A CREATIVE CAPITAL CONCEPT$, LLC; and
CREATIVE CAPITAL CONSORTIUM, LLC;

      Defendants.

_____/

## CLASS ACTION COMPLAINT

Plaintiffs NERLINE HORACE-MANASSE and GERALD SANON, individually and in their representative capacity for all those similarly situated, sue Defendants GEORGE THEODULE ("Theodule"), DOROTHY DELISFORT-THEODULE, YOLETTE THEODULE-WILLIAMS, MARIO THEODULE, JULIUS THEODULE, YVES THEODULE, A CREATIVE CAPITAL CONCEPT$, LLC ("Concept$"), and CREATIVE CAPITAL CONSORTIUM ("Consortium"), and state as follows.[1]

---

[1] Hereinafter, Defendants Dorothy Delisfort-Theodule, Yolette Theodule-Williams, Mario Theodule, Julius Theodule, and Yves Theodule are referred to as the "Individual Defendants." And as mentioned above, George Theodule is referred to simply as "Theodule," A Creative Capital Concept$, LLC is referred to as "Concept$," and Creative Capital Consortium, LLC is referred to as "Consortium."

Dockets.Justia.com

## NATURE OF ACTION

1.     This is a federal securities class action arising from yet another massive Ponzi scheme that has caused millions of dollars in losses to hundreds, if not thousands, of investors. Plaintiffs now bring the following causes of action against Defendants:

| | | |
|---|---|---|
| Count I | - | Violations of Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act of 1934"), 15 U.S.C. §78j, and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5; |
| Count II | - | Violations of Section 12(a) of the Securities Act of 1933 ("1933 Act"), 15 U.S.C. §77l; |
| Count III | - | Violations of Section 20(a) of the Exchange Act of 1934, 15 U.S.C. §78t; |
| Count IV | - | Violations of Section 15 of the 1933 Act; 15 U.S.C. §77o; |
| Count V | - | Unjust Enrichment; and |
| Count VI | - | Breach of Fiduciary Duty. |

And pursuant to those claims, Plaintiffs seek damages, rescission, pre-judgment interest, and costs.

## PARTIES

2.     Plaintiff Nerline Horace-Manasse is a resident of West Palm Beach, Florida. During all times material to this action, Ms. Horace-Manasse resided in Florida.

3.     Plaintiff Gerald Sanon is a resident of Lawrenceville, Georgia. During all times material to this action, Mr. Sanon resided in Georgia.

4.     During all times material to this action, Defendant George Theodule – the mastermind of a massive Ponzi scheme that bilked investors out of millions of dollars – resided in Florida and conducted business both individually and through various entities in Florida and elsewhere. Theodule solicited investments from Plaintiffs and others both individually and through Concept$, Consortium, and various "investment clubs" to promote and perpetuate the Ponzi scheme. On information and belief, Theodule has fled Florida, currently resides in Georgia, and is an imminent threat to flee Georgia as well. On further information and belief, Theodule traveled to Zurich, Switzerland just last week.

5.     Defendant Dorothy Delisfort-Theodule is a resident of Georgia who conducted business both individually and through various entities in Florida and elsewhere. She is Theodule's

2

wife, and she solicited investments from Plaintiffs and others both individually and through Concept$, Consortium, and various "investment clubs" to promote and perpetuate the Ponzi scheme.

6.  Defendant Yolette Theodule-Williams is a resident of Florida who conducted business both individually and through various entities in Florida and elsewhere. She is Theodule's sister, and she solicited investments from Plaintiffs and others both individually and through Concept$, Consortium, and various "investment clubs" to promote and perpetuate the Ponzi scheme.

7.  Defendant Mario Theodule is a resident of Florida who conducted business both individually and through various entities in Florida and elsewhere. He is Theodule's brother, and he solicited investments from Plaintiffs and others both individually and through Concept$, Consortium, and various "investment clubs" to promote and perpetuate the Ponzi scheme.

8.  Defendant Julius Theodule is a resident of Illinois who conducted business both individually and through various entities in Florida and elsewhere. He is Theodule's son, and he solicited investments from Plaintiffs and others both individually and through Concept$, Consortium, and various "investment clubs" to promote and perpetuate the Ponzi scheme.

9.  Defendant Yves Theodule is a resident of Illinois who conducted business both individually and through various entities in Florida and elsewhere. She is Theodule's relative and she solicited investments from Plaintiffs and others both individually and through Concept$, Consortium, and various "investment clubs" to promote and perpetuate the Ponzi scheme.

10.  Defendant A Creative Capital Concept$, LLC is an inactive Florida Limited Liability Company that conducted business in Florida from the principal address of 10176 Sheila Ct., Wellington, Florida during all times material to this action. Concept$ was used by Theodule and the Individual Defendants to raise funds to promote and perpetuate the Ponzi scheme. On September 26, 2008, the company was administratively dissolved for failure to file an annual report.

11.  Defendant Creative Capital Consortium, LLC is an active Florida Limited Liability Company that conducted business in Florida from the principal address of 8461 Lake Worth Road, Suite 128, Lake Worth, Florida during all times material to this action. Consortium was used by Theodule and the Individual Defendants to raise funds to promote and perpetuate the Ponzi scheme. Today, the doors to its Lake Worth headquarters are closed and the premises appears to be

3

abandoned.

12.     Theodule and the Individual Defendants directly participated in the management of Concept\$ and Consortium, were directly involved in the day-to-day operations of Concept\$ and Consortium, and were privy to confidential information concerning those companies and their business operations, by which Plaintiffs and members of the Class were bilked out of millions of dollars via Defendants' fraudulent Ponzi scheme. In violation of federal securities laws and the common law, Defendants all knowingly, or with reckless disregard, made material misrepresentations and, more significantly, failed to disclose material information to Plaintiffs, including the primary omissions that form the heart of the claims herein, namely the Defendants' failure to inform Plaintiffs that: (a) any and all investment returns depended on the contribution of moneys from new investors; and (b) that Defendants intended simply to steal Plaintiffs' moneys pursuant to an illegal Ponzi scheme.

## JURISDICTION AND VENUE

13.     This Court has jurisdiction of this action pursuant to 28 U.S.C. § 1337, Section 27 of the Exchange Act of 1934 (15 U.S.C. § 78aa), 28 U.S.C. § 1331, and Section 22(a) of the 1933 Act (15 U.S.C. § 77v(a)). The Court also has supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367.

14.     Venue is proper in this District pursuant to Section 27 of Exchange Act of 1934 and Section 22(a) of the 1933 Act, as Defendants conducted business in this district and many of the Defendants' acts and conduct charged herein occurred in this district. At all times material to this action, the offices of the umbrella organizations used to perpetrate the Ponzi scheme – *i.e.*, Concept\$ and Consortium – were located in this district.

15.     This Court has personal jurisdiction over all Defendants in that each Defendant participated in the illegal activities and wrongful conduct described herein, in this district.

16.     In connection with the acts and course of conduct alleged in this Complaint, the Defendants directly or indirectly used the means and instrumentalities of interstate commerce, including but not limited to the United States mail, interstate wires, and interstate telephone communications.

## CLASS ALLEGATIONS

17.     All Plaintiffs bring this action as a class action against all Defendants pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure on behalf of a class consisting of all persons and entities who provided moneys to Defendants, or to individuals or entities who were raising funds on behalf of Defendants, for purposes of "investing" in Defendants' fraudulent Ponzi scheme (the "Class"), from January 2007 through today and thereafter ("Class Period").[2]

18.     On information and belief, there are hundreds, if not thousands, of members in the proposed Class (the "Class Members"). While over fifty percent (50%) of the Class Members reside in Florida, members of the Class are so numerous and geographically dispersed throughout the United States and, to a lesser extent abroad, that joinder of all Class Members is impracticable.

19.     Plaintiffs will fairly and adequately protect the interests of all Class Members, and have retained counsel competent and experienced in class, securities, and commercial-fraud litigation.

20.     Plaintiffs' claims are typical of the claims of the Class Members, as Defendants engaged in a single, massive Ponzi scheme to steal Plaintiffs' and the Class Members' moneys, and made identical omissions of material facts in soliciting Plaintiffs and the Class Members to entrust their moneys to Defendants pursuant to the scheme.

21.     All Class Members sustained damages arising out of Defendants' wrongful conduct in violation of federal law and the common law.

22.     There are questions of law and fact common to the Class which predominate over any questions solely affecting individual Class Members. Among the questions of law and fact common to all Class Members are:

    a.      whether Defendants engaged in a massive Ponzi scheme to steal moneys from the Class;

    b.      whether Defendants' acts alleged herein violated federal securities fraud and

---

[2]Excluded from the Class are: Defendants, including their subsidiaries, affiliates, and their collective officers, agents, and employees; any "investment clubs" that solicited moneys on behalf or at the direction of Defendants; any officers, directors, principals, managers, or employees of any such investment clubs; members of the extended families of each Defendant, together with their heirs, successors and assigns; and individuals or entities who provided moneys to Defendants, or to individuals or entities who were raising funds on behalf of Defendants, for purposes of "investing" in Defendants' fraudulent Ponzi scheme, but who received back moneys in excess of the amount "invested."

registration statutes, and the common law;

      c.     whether Theodule and the Individual Defendants were control persons under the 1933 Act and the Exchange Act of 1934;

      d.     whether Defendants, together and with others, in connection with the purchase or sale of securities described herein, with intent to deceive, manipulate, or defraud, and/or with severe recklessness:

          i.     employed a device, scheme and artifice to defraud;

          ii.     made untrue statements of material facts and omitted material facts necessary to make the statements made, in the light of the circumstances under which they were made, not misleading; and/or

          iii.     engaged in acts, practices and courses of business which have operated as a fraud upon the purchasers of such securities;

      e.     whether the securities that Defendants sold to Plaintiffs and the Class Members were registered in compliance with federal statutes;

      f.     whether Defendants have been unjustly enriched at the Class's expense;

      g.     whether Defendants breached their fiduciary duties to Plaintiffs and the Class Members; and

      h.     whether the Class has sustained damages, and, if so, what is the proper measure of damages.

23.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy because joinder of the hundreds (if not thousands) of Class Members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for the Class Members to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

### GENERAL ALLEGATIONS

24.     In 2007 and early 2008, Theodule began planting the seeds for a massive, multi-state Ponzi scheme that ultimately would hoodwink Plaintiffs and the Class Members out of millions of

dollars.

25. Theodule's first steps in the scheme were to establish Concept$ and Consortium. Both of those companies would serve as the umbrella organizations for the scheme, purportedly to provide investment advice to hundreds, if not thousands, of investors, including Plaintiffs and the Class Members.

26. Theodule and the Individual Defendants then established dozens of "investment clubs" in 2007 and 2008 in Florida, Georgia, and other states to aid in the scheme and steal investors' moneys. Defendants continue to establish such clubs in Florida and Georgia to this very day.

27. Theodule used his Haitian background, his self-proclaimed status as a "Man of God," and his purported interest in helping to build wealth for his fellow Haitians, to solicit funds from members of the Haitian community – including Plaintiffs and the Class Members – in Florida, Georgia, and elsewhere to invest with Concept$, Consortium, and various "investment clubs" controlled by Theodule and the Individual Defendants.

28. In soliciting investments from Plaintiffs and the Class Members, Defendants represented that Theodule, an officer, director, and/or principal of Concept$ and Consortium, would act as the head investment "strategist," make all investment decisions, and invest the funds entrusted to Defendants in various securities, including stocks, bonds, and options.

29. Defendants (mis)represented to Plaintiffs and the Class Members that the principal amount invested – which was not permitted to be withdrawn during the first ninety days after investment – was guaranteed as a "zero-loss."

30. Defendants further (mis)represented to Plaintiffs and the Class Members that under Defendants' investment "strategies," Plaintiffs' and the Class Members' moneys would double in value every three months.

31. Based on the above misrepresentations, Plaintiffs and the Class Members provided and entrusted their moneys to Defendants, investing with Defendants in a common enterprise, where Plaintiffs and the Class Members expected profits solely from Defendants' efforts.

32. Unbeknownst to Plaintiffs and the Class Members, Defendants had not filed any registration statements for the securities sold to Plaintiffs and the Class Members (neither were

7

Theodule, nor any of the other Defendants, registered with the state of Florida or any other state to sell securities or provide investment advice). Nevertheless, Defendants sold unregistered securities to Plaintiffs and the Class Members (and purported to provide investment advice).

33.     Further unbeknownst to Plaintiffs and the Class Members, any and all investment returns were dependent on contributions of moneys from new investors, and Defendants intended to steal Plaintiffs' and the Class Members' moneys pursuant to a Ponzi scheme.

34.     Once Plaintiffs and the Class Members provided their moneys to the "investment clubs" that Defendants controlled, Defendants caused certain funds belonging to Plaintiffs and the Class Members to be transferred from the investment clubs to Concept$, Consortium, and third-party entities, where the moneys were pooled together and traded in securities markets by Defendants. But Defendants caused significant portions of the funds belonging to Plaintiffs and the Class Members to be transferred to Defendants and other third parties in blatant acts of theft.

35.     Throughout the bulk of 2008, Defendants misrepresented to Plaintiffs and the Class Members – both orally and in writing – that Plaintiffs' and the Class Members' moneys had doubled in value every three months. As just one example, Plaintiff Nerline Horace-Manasse invested $20,000 in February 2008 with Defendants and an "investment club" that Defendants established, Crown Ambassador Investment, LLC. Three months later, in May 2008, Ms. Horace-Manasse was (mis)informed in writing that her investment principal had doubled to $40,000. Three months after that, in August 2008, she was (mis)informed in writing that she had again doubled her moneys and that her balance with Crown Ambassador thus stood at $80,000. None of those representations were true.

36.     Defendants made similar misrepresentations to Plaintiff Gerald Sanon and the other Class Members regarding the purported doubling of their respective moneys throughout 2008.

37.     During the first half of 2008, certain investors requested to withdraw their purported investment gains, but, of course, there were no such gains to provide to the investors. And with no such gains available to honor the withdrawal requests, Defendants instead provided these early investors with subsequent investors' moneys in classic Ponzi-scheme fashion. As just one example, Plaintiff Gerald Sanon made an initial investment of $25,000 in or about February 2008, and on or about May 2008, he received back his original $25,000 investment, plus an additional $25,000 for a

8

total return of $50,000 (less Defendant's "fee"). This created the illusion that the scheme was legitimate, as Defendants' investment strategies seemingly had produced the promised 100% returns. This deception permitted Defendants to continue soliciting additional investments from existing and new investors without anyone suspecting foul play. Indeed, after Mr. Sanon received the aforementioned $50,000 from Defendants, he invested $100,000 with Defendants in June 2008. But by then, the Ponzi scheme was on the verge of collapse and, in fact, Mr. Sanon has not received back a single penny in conjunction with his second investment, notwithstanding repeated demands.

38.     Like every Ponzi scheme, Defendants' scheme ultimately collapsed. In the summer of 2008, Plaintiffs and certain members of the Class sought to withdraw their moneys. Defendants, however, informed Plaintiffs and the Class Members that no moneys could be distributed at that time, but rather that distributions would be available in or around November 2008, or thereafter. But that too was not true. Rather, Defendants were merely seeking to buy time – as is often the case when a Ponzi scheme is on the verge of collapse.

39.     Indeed, when Plaintiffs and certain members of the Class arrived at Consortium's headquarters in Lake Worth, Florida, beginning in or around November 2008 to withdraw their moneys, the doors were locked, the business appeared to be abandoned, and obviously no moneys were distributed to Plaintiffs and the Class Members.

40.     To date, Plaintiffs and the Class Members – many of whom entrusted their entire life savings to Defendants – have suffered massive losses due to the fraudulent scheme perpetrated by Defendants.

41.     But for Defendants' fraud, there would have been no market for the securities and investment contracts that Defendants sold to Plaintiffs and the Class Members.

42.     Defendants' wrongful conduct, as alleged herein, directly and proximately caused the damages suffered by Plaintiffs and the Class.

43.     All required conditions precedent have been performed or have occurred prior to filing this Complaint.

44.     Plaintiffs have retained the undersigned attorneys to this bring this action, and have agreed to pay reasonable attorney's fees to the undersigned.

9

45.     Plaintiffs re-allege and incorporate by reference paragraphs 1 through 44 as if fully set forth herein.

46.     All Defendants are sued either as primary participants in the wrongful and illegal conduct alleged herein or as controlling persons as alleged herein.

47.     Beginning in January 2007 and continuing through today, Defendants, individually and in concert, directly and indirectly, by use of the means and instrumentality of interstate commerce, and of the mails in connection with the purchase or sale of securities described herein, have with knowing intent to deceive, manipulate, or defraud, and/or with severe recklessness:

     a.     employed a device, scheme and artifice to defraud;

     b.     made untrue statements of material facts and omitted material facts necessary to make the statements made, in the light of the circumstances under which they were made, not misleading; and

     c.     engaged in acts, practices and courses of business which have operated as a fraud upon the purchasers of such securities

48.     Specifically, Defendants violated Section 10(b) of the Exchange Act of 1934 when they, knowingly with intent to deceive, manipulate, or defraud, and/or with severe recklessness, solicited and accepted investment moneys from Plaintiffs and the Class Members while failing uniformly to inform Plaintiffs and the Class Members, that:

     a.     none of the Defendants were registered with the State of Florida or any other state to sell securities or provide investment advice;

     b.     the securities in which Plaintiffs and the Class Members were investing were not registered;

     c.     any and all returns on investment were dependent on contributions of moneys from new investors; and

     d.     Defendants intended simply to steal Plaintiffs' and the Class Members' moneys

through a Ponzi scheme.

49.    Simply put, Defendants solicited and accepted moneys from Plaintiffs and the Class Members while standing uniformly mute regarding the true nature of the Ponzi scheme.

50.    Under the circumstances described in this Complaint, Plaintiffs and all members of the Class are entitled to a Class-wide presumption of reliance because:

a.    The fraud attributable to Defendants created the market for the securities at issue – *i.e.*, there would have been no market for the securities at issue but for the fraud perpetrated by Defendants;

b.    Defendants perpetrated their fraudulent Ponzi scheme primarily via omissions – *i.e.*, Defendants failed to disclose that payment of the promised investment returns necessarily depended on the contribution of moneys from new investors and, moreover, Defendants intended simply to steal the moneys "invested" by Plaintiffs and members of the Class; and

c.    All Plaintiffs and Class Members were victimized by the same common course of fraud perpetrated by Defendants.

51.    Simply put, Plaintiffs and all other members of the Class are entitled to a Class-wide presumption of reliance because Defendants perpetrated a fraudulent Ponzi scheme on unwitting investors, and no reasonable actor would choose to "invest" in a fraudulent Ponzi scheme that aimed simply to steal investors' moneys.

52.    Since in or about the Summer of 2008, Defendants have prohibited Plaintiffs and all members of the Class from making any withdrawals of their principal amounts invested or their purported gains. In addition, the doors to Concept$'s and Consortium's businesses are closed, the business premises appears to be abandoned, and Theodule and his Defendant-wife have fled Florida. Accordingly, there exists a strong inference that Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 thereunder by acting with knowing intent to deceive, manipulate or defraud and/or with severe recklessness.

53.    As a direct and proximate result of the conduct alleged herein and Defendants' violations of Section 10(b) of the Exchange Act and Rule 10b-5 thereunder, Plaintiffs and the Class Members have suffered damages in connection with their investments with Defendants.

11

**WHEREFORE**, Plaintiffs demand judgment against Defendants for damages, plus pre-judgment interest, costs, and all such other relief the Court deems just and proper.

**PLEASE SEE COUNT II ON THE FOLLOWING PAGE**

## COUNT II
## VIOLATIONS OF SECTION 12(a) OF THE SECURITIES ACT OF 1933, 15 U.S.C. § 77L
### (AGAINST ALL DEFENDANTS)

54.     Plaintiffs re-allege and incorporate paragraphs 1 through 44 as if fully set forth herein.

55.     Defendants failed to file any registration statement as to the subject securities that Defendants sold to Plaintiffs and the Class Members.

56.     Notwithstanding the fact that Defendants failed to file a registration statement, Defendants offered and sold securities to Plaintiffs and the Class Members.

57.     The subject securities were offered and sold to Plaintiffs and the Class Members through the use of interstate transportation or communication and the mails.

58.     All Defendants have offered, sold, promoted, solicited, or passed titled on the subject securities to Plaintiffs and the Class Members, and thus are statutory sellers to Plaintiffs and the Class Members.

59.     As such, all Defendants have violated section 5 of the Securities Act of 1933 and are liable to all Plaintiffs and Class Members who have purchased securities from Defendants.

60.     As a direct and proximate result of the conduct alleged herein, Plaintiffs and the Class Members have suffered damages in connection with their investments with Defendants.

**WHEREFORE**, Plaintiffs demand judgment against Defendants for rescission and/or damages, pre-judgment interest, costs, and all such other relief the Court deems just and proper.


## PLEASE SEE COUNT III ON THE FOLLOWING PAGE

## COUNT III
## VIOLATIONS OF SECTION 20(a) OF THE EXCHANGE ACT OF 1934, 15 U.S.C. § 78T
### (AGAINST THEODULE AND THE INDIVIDUAL DEFENDANTS)

61. Plaintiffs re-allege and incorporate paragraphs 1 through 44 as if fully set forth herein.

62. As alleged more fully above, Defendants' conduct violated Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder.

63. During all times material to this action, Theodule and the Individual Defendants had the power, both direct and indirect, to control Concept$ and Consortium, did in fact exercise such control, and were therefore "controlling persons" within the meaning of Section 20(a) of the Exchange Act of 1934.

64. Plaintiffs and the Class Members have been damaged by the wrongful conduct of Theodule and Individual Defendants through their control of Concept$ and Consortium, in that the wrongful conduct caused Plaintiffs and the Class Members to invest in Defendants' Ponzi scheme and lose their moneys.

65. As such, Theodule and the Individual Defendants are jointly and severally liable for all damages or losses suffered by Plaintiffs and the Class Members.

**WHEREFORE**, Plaintiffs demand judgment against Theodule and the Individual Defendants for rescission and/or damages, pre-judgment interest, costs, and all such other relief the Court deems just and proper.

### PLEASE SEE COUNT IV ON THE FOLLOWING PAGE

14

## COUNT IV
### VIOLATIONS OF SECTION 15 OF THE SECURITIES ACT OF 1933, 15 U.S.C. § 77o
(AGAINST THEODULE AND THE INDIVIDUAL DEFENDANTS)

66.     Plaintiffs re-allege and incorporate paragraphs 1 through 44 as if fully set forth herein.

67.     As alleged more fully above, Defendants' conduct violated Section 5 of the Securities Act of 1933 and Section 12(a).

68.     During all times material to this action, Theodule and the Individual Defendants had the power, both direct and indirect, to control Concept$ and Consortium, did in fact exercise such control, and were therefore "controlling persons" within the meaning of Section 15 of the 1933 Act.

69.     Plaintiffs and the Class Members have been damaged by the wrongful conduct of Theodule and Individual Defendants through their control of Concept$ and Consortium, in that the wrongful conduct caused Plaintiffs and the Class Members to invest in Defendants' Ponzi scheme and lose their moneys.

70.     As such, Theodule and the Individual Defendants are jointly and severally liable for all damages or losses suffered by Plaintiffs and the Class Members.

**WHEREFORE**, Plaintiffs demand judgment against Theodule and the Individual Defendants for rescission and/or damages, pre-judgment interest, costs, and all such other relief the Court deems just and proper.

### PLEASE SEE COUNT V ON THE FOLLOWING PAGE

## COUNT V
### UNJUST ENRICHMENT
(AGAINST ALL DEFENDANTS)

71.     Plaintiffs re-allege paragraphs 1 through 44 as if fully set forth herein.

72.     By entrusting their moneys to Defendants, Plaintiffs and the Class Members conferred benefits on Defendants by investing in the Ponzi scheme Defendants have perpetrated on unwitting victims. Defendants had knowledge of those benefits.

73.     Defendants voluntarily accepted and retained the benefits conferred by Plaintiffs and the Class Members.

74.     The circumstances are such that it would be inequitable for Defendants to retain the benefits without paying the value thereof to Plaintiffs and the Class Members.

75.     Defendants have been unjustly enriched at the expense of Plaintiffs and the Class Members.

76.     Plaintiffs and the Class Members are entitled to damages as a result of Defendants' unjust enrichment, including the disgorgement of all moneys unlawfully accepted by Defendants from Plaintiffs and the Class Members.

**WHEREFORE**, Plaintiffs demand judgment against Defendants for damages, prejudgment interest, costs, and all such other relief the Court deems just and proper.

**PLEASE SEE COUNT VI ON THE FOLLOWING PAGE**

## COUNT VI
### BREACH OF FIDUCIARY DUTY
### (AGAINST ALL DEFENDANTS)

77. Plaintiffs re-allege and incorporate paragraphs 1 through 44 as if fully set forth herein.

78. Plaintiffs and the Class Members shared a relationship with Defendants whereby Defendants held themselves out as worthy of the trust and confidence of Plaintiffs and all Class members, Plaintiffs and the Class Members in fact reposed trust and confidence in Defendants to invest Plaintiffs' and the Class Members' moneys prudently, and Defendants undertook such trust and assumed a duty to advise and counsel Plaintiffs and the Class Members, and to protect Plaintiffs' and the Class Members' assets.

79. Defendants breached their duties to advise and counsel Plaintiffs and the Class Members, and to protect Plaintiffs' and the Class Members' assets.

80. Defendants' breaches caused Plaintiffs and the Class Members to suffer damages.

**WHEREFORE**, Plaintiffs demand judgment against Defendants for damages, punitive damages, prejudgment interest, costs, and all such other relief the Court deems just and proper.

### DEMAND FOR JURY TRIAL

81. Plaintiffs demand a trial by jury on all issues so triable.

Respectfully submitted,

DIMOND KAPLAN & ROTHSTEIN, P.A.
Offices at Trump Plaza
525 South Flagler Drive, Suite 200
West Palm Beach, FL 33401
Telephone:    (561) 671-1920
Facsimile:    (561) 671-1951
Email:        drothstein@dkrpa.com
              jlevy@dkrpa.com
              blevin@dkrpa.com

By:_____

DAVID A. ROTHSTEIN
Fla. Bar. No. 056881
JARED A. LEVY
Fla. Bar No. 645486
BRIAN LEVIN
Fla. Bar. No. 26392

17

# 08-81560-CIV-RYSKAMP/VITUNAC

**CIVIL COVER SHEET**

FILED by **R B** D.C.
ELECTRONIC

**Dec. 26, 2008**

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as re
by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of
the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.) **NOTICE: Attorneys MUST Indicate All Re-filed Ca**

## I. (a) PLAINTIFFS

Nerline Horace Manasse; and Gerald Sanon

**DEFENDANTS**

George Theodule, et. al.

**(b)** County of Residence of First Listed Plaintiff   Palm Beach, FL
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant   Rockdale, GA
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT
LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Dimond Kaplan & Rothstein   (David A. Rothstein & Jared A. Levy)
525 South Flagler Drive, Suite 200
West Palm Beach, FL 33401   (561) 671-1920

Attorneys (If Known)

**(d)** Check County Where Action Arose:  ☐ MIAMI- DADE  ☐ MONROE  ☐ BROWARD  ☑ PALM BEACH  ☐ MARTIN  ☐ ST. LUCIE  ☐ INDIAN RIVER  ☐ OKEECHOBEE
HIGHLANDS

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1  U.S. Government
Plaintiff

☑ 3  Federal Question
(U.S. Government Not a Party)

☐ 2  U.S. Government
Defendant

☐ 4  Diversity
(Indicate Citizenship of Parties in Item III)

O8CV 80560 KLR/AEV

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)   and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☒ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. Security | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Act | ☐ 871 IRS— Third Party | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | ☐ 900 Appeal of Fee Determination |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | | Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 462 Naturalization | | ☐ 950 Constitutionality of State |
| | Employment | ☐ 550 Civil Rights | Application | | Statutes |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | ☐ 463 Habeas Corpus-Alien | | |
| | Other | | Detainee | | |
| | ☐ 440 Other Civil Rights | | ☐ 465 Other Immigration | | |
| | | | Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

☑ 1 Original
Proceeding

☐ 2 Removed from
State Court

☐ 3 Re-filed-
(see VI below)

☐ 4 Reinstated or
Reopened

☐ 5 Transferred from
another district
(specify)

☐ 6 Multidistrict
Litigation

☐ 7 Appeal to District
Judge from
Magistrate
Judgment

## VI. RELATED/RE-FILED
CASE(S).

(See instructions
second page):

a) Re-filed Case ☐ YES ☑ NO   b) Related Cases ☐ YES ☑ NO

JUDGE _____   DOCKET NUMBER _____

## VII. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing and Write a Brief Statement of Cause (**Do not cite jurisdictional statutes unless diversity**):

15 USC 78j; 15 USC 77l; 15 USC 78t; 15 USC 77o -- Fraud in connection with securities transactions;
unregistered securities sales

LENGTH OF TRIAL via   30   days estimated (for both sides to try entire case)

## VIII. REQUESTED IN
COMPLAINT:

☑ CHECK IF THIS IS A CLASS ACTION
UNDER F.R.C.P. 23

**DEMAND $**
100,000,000.00

CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☑ Yes ☐ No

ABOVE INFORMATION IS TRUE & CORRECT TO
THE BEST OF MY KNOWLEDGE

SIGNATURE OF ATTORNEY OF RECORD

DATE
12/26/08

FOR OFFICE USE ONLY

AMOUNT   350 ᵉᵉ   RECEIPT # _____   IFP _____

725243